## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RHINO ASSOCIATES, L.P.,** | : | **CIVIL ACTION NO. 1:04-CV-1611** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **BERG MANUFACTURING AND** | : | |
| **SALES CORPORATION and** | : | |
| **CENCOR PLASTICS, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 142) of plaintiff Rhino

Associates, L.P. ("Rhino") for default judgment against defendant Berg

Manufacturing and Sales Corporation ("Berg").[1]  For the reasons that follow, the

motion will be granted in part and denied in part.

## I.   Background

Rhino commenced the instant action on July 22, 2004 alleging willful patent

infringement against Berg.  (See Doc. 1.)  Berg answered the complaint on

August 25, 2004 and filed a counterclaim against Rhino asserting that the patent at

issue (patent no. Re. 34,889, hereinafter "the '889 patent") was invalid and

unenforceable.  (Doc. 7.)

---

[1] Rhino previously filed a motion for default judgment.  (See Doc. 136.)  The
court will deny the motion as moot.  This ruling is without prejudice to Rhino's
right to file a motion for default judgment against defendant Cencor Plastics, Inc.

On June 16, 2005, Berg's counsel filed a motion to withdraw contending that

Berg owed over $100,000 for services rendered and that Berg was "judgment proof"

as it had transferred all of its assets to another party. (Doc. 25.)  The memorandum

and order of court dated June 24, 2005 (Doc. 35) directed counsel to confer with

Berg regarding the ramifications of being unrepresented, that is, the likely entry of

default judgment against Berg.  On July 1, 2005 after a telephone conference

hearing, the court granted Rhino's motion for a temporary restraining order.

(Doc. 44.)  Despite the likely entry of default judgment, the temporary restraining

order against it, and Rhino's motions for summary judgment (Docs. 26, 27, 28) and

for a preliminary injunction (Doc. 42),[2] Berg consented to the withdrawal of its

counsel (see Doc. 45).  The order of court dated July 12, 2005 (Doc. 46) granted

counsel's motion to withdraw and directed Berg to secure representation or face

the entry of default judgment against it.

On July 25, 2005, Berg secured new counsel and subsequently opposed

Rhino's motions for summary judgment.  (See Docs. 49-52, 74-79.)  Berg also

participated, through counsel, in the hearing on claim construction and the motions

for summary judgment.  (See Docs. 84, 91.)  In July and August, 2006, counsel for

Berg moved to withdraw (Docs. 117, 120), contending that Berg owed over $50,000

---

[2] The order of court dated July 15, 2007 (Doc. 48) granted Rhino's motion for
a preliminary injunction.  Berg's subsequent motion to dissolve the preliminary
injunction (Doc. 66) was denied by the order of court dated January 13, 2006
(Doc. 87).  The order also directed Rhino to post a bond or appropriate security in
the amount of $75,000.  See FED. R. CIV. P. 65(c).

for services rendered and had failed to make payment for over a year (Doc. 130).[3]

The court directed Berg to show cause why the motions to withdraw should not be

granted.  (See Docs. 119, 132.)  Berg did not respond to the court's directive and the

order of court dated May 1, 2007 (Doc. 134) granted counsel's motions to withdraw.

On May 11, 2007, Rhino filed its initial motion for default judgment

(Doc. 136).  The order of court dated May 14, 2007 (Doc. 137) directed Berg to secure

the appearance of counsel and show cause why default judgment should not be

entered against it by May 25, 2007.  Rhino subsequently filed the instant motion for

default judgment (Doc. 142) and supporting documents (Docs. 145, 150), requesting

damages of $1,364,160.00 and attorney's fees and costs of $488,392.28.[4]  The order of

court dated September 11, 2007 (Doc. 147) permitted Berg to respond to Rhino's

requested damages, attorney's fees, and costs.  As of the date of this memorandum,

Berg has not secured representation, shown cause why default judgment should not

be entered against it, responded to Rhino's requested damages, attorney's fees, and

costs, or otherwise communicated with the court.

II.   **Discussion**

An entry of default under Rule 55(a) of the Federal Rules of Civil Procedure

must precede an entry of default judgment under Rule 55(b)(2).  See Nationwide

Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 521 n.1 (3d

---

[3] The court deferred ruling on the motions to withdraw pending resolution of claim construction and the motions for summary judgment.  (See Doc. 122.)

[4] See supra note 1.

Cir. 2006). An entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." FED. R. CIV. P. 55(a).[5]

In the matter *sub judice*, the court finds that the entry of default against Berg is warranted. As a corporation, Berg must be represented in court by counsel. See Simbraw, Inc. v. United States, 367 F.2d 373, 373 (3d Cir. 1966) (per curiam) (holding that "a corporation [must], to litigate its rights in a court of law, employ an attorney at law to appear for it and represent it in the court"), cited with approval in Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 203 (1993). The order of court dated May 1, 2007 (Doc. 134) granted the motions to withdraw by counsel for Berg.[6] To date, Berg has not secured representation or

---

[5] See Sys. Indus., Inc. v. Han, 105 F.R.D. 72, 74 n.1 (E.D. Pa. 1985) ("Although Rule 55(a) speaks of entry of a default by the clerk, the court has the power to perform this task as well."); see also Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-19 (3d Cir. 1992).

[6] When counsel for a corporation seeks to withdraw, a district court must consider the "ordinary rules of withdrawal" and determine whether the attorney's continued representation of the corporate client serves a "meaningful purpose." Buschmeier v. G&G Invs., Inc., 222 F. App'x 160, 164 (3d Cir. 2007). The court permitted counsel to withdraw because Berg failed, for over a year, to pay for services rendered and counsel's continued representation served "no meaningful purpose." Id. The ordinary rules of withdrawal favored withdrawal based on Berg's failure to pay and the subsequent financial burden on counsel. See PA. RULES PROF'L CONDUCT R. 1.16(b)(5)-(6); see also L.R. 83.23.2 (adopting Pennsylvania Rules of Professional Conduct). Moreover, the risk of prejudice to Berg was minimal because Berg was aware of the consequences of counsel's withdrawal, yet refused to communicate with counsel or the court. Such refusal evinced Berg's unwillingness to defend itself in these proceedings.

otherwise communicated with the court despite the order of court dated May 14, 2007 (Doc. 137) which directed Berg to secure the appearance of counsel and show cause why default judgment should not be entered against it and the order of court dated September 11, 2007 (Doc. 147) which permitted Berg to respond to Rhino's claims for damages, attorney's fees, and costs.  Although Berg filed an answer in this action (see Docs. 7, 107), the entry of default against Berg is nonetheless appropriate for Berg's failure to "otherwise defend" itself.  See FED. R. CIV. P. 55(a); see also Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 918 (3d Cir. 1992) ("The failure to plead is no greater an impediment to the orderly progress of a case than is the failure to appear at trial or meet other required time schedules, and we see no reason why the former would be subject to a sanction [under Rule 55] not equally applicable to the latter.."); id. at 918-19 ("[T]he district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests.").

Having concluded that default against Berg is warranted, the court turns to the issue of default judgment.  See FED. R. CIV. P. 55(b)(2).  In accordance with the notice requirement of Rule 55(b)(2), the order of court dated May 14, 2007 (Doc. 137) directed Rhino to serve a copy of the motion for default judgment on Berg.  See FED. R. CIV. P. 55(b)(2) ("If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment

at least 3 days prior to the hearing on such application.").  The following day, Rhino

served Berg with its motion for default judgment, its proposed order, and the order

of court which directed Berg to secure the appearance of counsel and show cause

why default judgment should not be entered against it.  (See Doc. 138.)  In an

abundance of caution, the court again permitted Berg to respond to Rhino's

requested damages, attorney's fees, and costs.  (See Doc. 147.)  Given the evidence

on damages and fees submitted by Rhino (see Doc. 145, Exs. 2-3; Doc. 150), which

remains unopposed by Berg, the court finds that a hearing on damages is not

required.  See 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND

PROCEDURE § 2688 (3d ed. 2007) ("Rule 55 does not require that testimony be

presented as a prerequisite to the entry of a default judgment, and thus several

courts have determined that a hearing is not required before entering a default.").

Therefore, the court will address Rhino's request for injunctive relief, damages, and

attorney's fees and costs.

### A.    Injunctive Relief

Section 283 of the Patent Act provides that the court "may grant injunctions

in accordance with the principles of equity to prevent the violation of any right

secured by patent."  35 U.S.C. § 283.  Without a trial on the merits, Rhino has not

proved that Berg's ramp infringes the '889 patent.  However, "a consequence of the

entry of default judgment is that 'the factual allegations of the complaint, except

those relating to the amount of damages, will be taken as true.'"  Whelan v. A. Ward

Enters., Inc., No. 01-2874, 2002 WL 1745614, at *2 (E.D. Pa. July 23, 2002) (quoting

Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).  Therefore, the
allegation of infringement is taken as true for the purpose of the instant motion only
and the court will issue a permanent injunction.  See id.

**B.    Damages**

Section 284 of the Patent Act provides:  "Upon finding for the claimant the
court shall award the claimant damages adequate to compensate for the
infringement, but in no event less than a reasonable royalty for the use made of the
invention by the infringer."  35 U.S.C. § 284.  In the matter *sub judice*, the
undisputed evidence of record reveals that Berg sold at least 90,948 sets of
infringing ramps from January 1, 2004 through May 25, 2005.  (Doc. 145, Ex. 3.)
Rhino seeks a reasonable royalty of $5.00 per set of infringing ramps sold by Berg.

A reasonable royalty is the amount "a prudent licensee . . . would have been
willing to pay . . . and yet be able to make a reasonable profit and which amount
would have been acceptable by a prudent patentee who was willing to grant a
license."  Sightsound.com, Inc. v. N2K, Inc., 391 F. Supp. 2d 321, 355 (W.D. Pa. 2003)
(citation omitted); see also id. at 355 n.30 (setting forth other factors to consider in
determining a reasonable royalty).  The court finds that $5.00 is a reasonable
royalty.  Rhino entered into an exclusive license agreement with Blitz, Inc. ("Blitz")
regarding the '889 patent.  (Doc. 150, Ex. 5 ¶ 4.)  Blitz sold the ramps to customers
for $20.00 per set and instructed Rhino that it would require a $5.00 royalty to waive
its exclusive rights.  (Id. ¶¶ 9, 12.)  During the relevant time period, Berg sold the
infringing ramps at more than $5.00 below Blitz's $20.00 price.  (Doc. 145, Ex. 3;

Doc. 150, Ex. 5 ¶ 10.)  In other words, Berg could have passed a $5.00 royalty on to

its customers and still been able to undersell Blitz.  Therefore, the court finds that

$5.00 per set is a reasonable royalty in the instant matter.  With 90,948 infringing

ramps sold, this royalty amounts to $454,740 in damages and the court will grant the

instant motion with respect to these damages.

The court's analysis of damages does not end here.  Rhino seeks enhanced

damages, arguing that Berg willfully infringed the '889 patent.  Section 284 of the

Patent Act allows the court to "increase the damages up to three times the amount

found or assessed."  35 U.S.C. § 284.  Such an award is punitive in nature and

"depends on a showing of willful infringement or other indicium of bad faith

warranting punitive damages."  Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566,

1574 (Fed. Cir. 1996).  To determine whether an infringement is willful or in bad

faith, the court must look at the totality of the circumstances.  See Liquid Dynamics

Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006).  The United States

Court of Appeals for the Federal Circuit recently set forth the standard for

determining whether enhanced damages for willful infringement under § 284 are

warranted:

> [We] hold that proof of willful infringement permitting enhanced
> damages requires at least a showing of objective recklessness.
> Because we abandon the affirmative duty of due care, we also
> reemphasize that there is no affirmative obligation to obtain opinion of
> counsel.
>        We fully recognize that "the term [reckless] is not self-defining."
> However, "[t]he civil law generally calls a person reckless who acts . . .
> in the face of an unjustifiably high risk of harm that is either known or
> so obvious that it should be known."  Accordingly, to establish willful

infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  The state of mind of the accused infringer is not relevant to this objective inquiry.  If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer.

In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (citations omitted).

In the matter *sub judice*, the court finds that Berg did not willfully infringe the '889 patent.  The evidence submitted by the parties at the summary judgment stage reveals that Joel Berg ("Joel") saw Rhino's ramp and believed that Berg could design it better.  (See Doc. 30, Ex. B at 47.)  Joel read the '889 patent and attempted to design around it when he created a ramp with three individual components, two of which—the platform and incline components—are "self-locking" with a dowel and pin structure.[7]  (See Doc. 30, Ex. B at 47, 65, 69, 89-90.)  The '889 patent discloses a ramp that, once constructed, is "essentially one piece."[8]  (See Doc. 1, Ex. A.)  Given the attempt to design around the "essentially one piece" requirement in the '889 patent, the court finds that Berg did not act with "an objectively high likelihood that its actions constituted infringement of a valid patent."  In re Seagate Tech., LLC, 497 F.3d at 1371; see also Westvaco Corp. v. Int'l Paper Co., 991 F.2d

---

[7] A prototype of the Berg ramp was created by cutting a Rhino ramp in half, adding a dowel and pin structure between the two pieces, and adding a wood mat. (See Doc. 30, Ex. B at 50.)

[8] The memorandum and order of court dated March 29, 2007 construed the phrase "a structure that is essentially one piece" in the '889 patent as "a structure that is basically, fundamentally, substantially, or virtually a single piece after being constructed or assembled."  (Doc. 127 at 19.)

735, 745 (Fed. Cir. 1993) ("One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace.  It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them." (quoting <u>State Indus., Inc. v. A.O. Smith Corp.</u>, 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) )).  Therefore, Rhino has not demonstrated objective recklessness by Berg and enhanced damages are not warranted.  Accordingly, the court will deny the instant motion with respect to Rhino's request for enhanced damages.

**C.    <u>Attorney's Fees and Costs</u>**

Section 285 of the Patent Act provides:  "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An exceptional case is a case "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement."  <u>Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  In the matter *sub judice*, Rhino requests attorney's fees and costs for Berg's willful infringement.  (<u>See</u> Doc. 145 at 12.)  As discussed <u>supra</u>, the court finds that Berg did not willfully infringe the '889 patent.  Therefore, the court will deny Rhino's request for attorney's fees and costs.

**D.    <u>Other Relief</u>**

Rhino also seeks a modification of the protective order dated September 23, 2004 (Doc. 12) to allow Rhino to use confidential information obtained during the

instant action in any subsequent action involving the '889 patent.  (See Doc. 145 at

13-14.)  Berg does not dispute Rhino's contention that Berg is out of business[9] or

that Rhino will be unable to retrieve information from Berg in the future.

Therefore, the court will modify the protective order to allow Rhino to use

confidential information obtained from Berg during the instant action in any

subsequent action involving the '889 patent and Berg's ramps.

**III.**   **Conclusion**

For the foregoing reasons, the motion for default judgment against Berg will

be granted in part and denied in part.  An appropriate order will issue.


　　S/ Christopher C. Conner　　
CHRISTOPHER C. CONNER
United States District Judge


Dated:　　November 14, 2007

---

[9] Defendant Cencor Plastics, Inc. purchased all right, title, and interest in the assets of Berg.  (See Doc. 102 ¶ 22; Doc. 105 ¶ 22.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RHINO ASSOCIATES, L.P., | : | CIVIL ACTION NO. 1:04-CV-1611 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| BERG MANUFACTURING AND | : | |
| SALES CORPORATION and | : | |
| CENCOR PLASTICS, INC., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of November, 2007, upon consideration of plaintiff's

motions (Docs. 136, 142) for default judgment against defendant Berg

Manufacturing and Sales Corporation, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motion for default judgment (Doc. 142) is GRANTED in part and
   DENIED in part as follows:

   a. The Clerk of Court is directed to enter DEFAULT against
      defendant Berg Manufacturing and Sales Corporation.  See
      FED. R. CIV. P. 55(a).

   b. The Clerk of Court is directed to enter JUDGMENT in favor of
      plaintiff and against defendant Berg Manufacturing and Sales
      Corporation in the amount of $454,740.00.

   c. Defendant Berg Manufacturing and Sales Corporation, its
      officers, its agents, its servants, its employees, its attorneys, and
      those persons in active concert or participation with defendant
      who receive actual notice of this order and judgment by
      personal service or otherwise are permanently ENJOINED
      from:

i.     Making, using, offering to sell, or selling within the United States or importing into the United States the products identified as "Berg Product 23404" and "Berg Product 23405," also known as "Autoramp Poly Plus"; and

ii.     Actively inducing others to make, use, offer to sell, or sell within the United States or to import into the United States the products identified as "Berg Product 23404" and "Berg Product 23405," also known as "Autoramp Poly Plus."

d.     The Clerk of Court is directed to RETURN to plaintiff the $75,000 security bond posted (Doc. 88).

e.     The protective order dated September 23, 2004 (Doc. 12) is MODIFIED to allow plaintiff to use confidential information obtained from defendant Berg Manufacturing and Sales Corporation during the instant action in any subsequent action involving the '889 patent and Berg's ramps.

f.     The motion for default judgment (Doc. 142) is otherwise DENIED.

2.     The motion for default judgment (Doc. 136) is DENIED as moot without prejudice to plaintiff's right to file a motion for default judgment against defendant Cencor Plastics, Inc.


        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge